We'll hear first from Mr. Ruth, then Mr. Dewey, then Mr. Kelly, and then you'll have a little bit of time to consume, not consume, Mr. Dewey. Good morning, Your Honors. May it please the Court, I'm Stephen Ruth. I'm here from the law firm of Orrick, Harrington, and Sutcliffe with me are my colleagues, Dan Harris and Danny Dago. Also in the courtroom is my client, CFO Dave Riesmeyer. We're here on behalf of In a case that arises out of a complaint brought by Lighting Ballast Control, LLC, which I refer to as LBC, an Acacia subsidiary in the Wichita Falls Division of Northern District of Texas. The Court took this case en banc to consider three specific issues relating to the continued vitality of the purely de novo standard of review that the Court adopted 15 years ago in the Sidewood case. How the Court answers those questions will affect hundreds of ongoing patent infringement cases in the district court and before this court and in cases yet to come. As the United States said in its amicus brief, and we can completely agree with, resolving those three questions is hard work, and it's very important. At the same time, the controversy that brings my client into the Court today is also very important. It is, however, a much more straightforward question, and the outcome is clear, regardless of what this Court does with the Sidewood standard. Now, in addition to the party briefs, the Court has received briefs from 21 amicus. Those 21 briefs have something in common with the ULT brief that we filed. All of those briefs start their analysis of Sidewood by recognizing that at least with respect to the ultimate issue of claim construction, which sets the effect and the scope of claims, the review should remain de novo. Every one of the amicus and LBC and ULTs hold that position. LBC is the only exception. They argue that for a purely clear error standard of review for claim construction, and the reason they do that is because it's the only way, an adoption of that standard, that they could possibly argue logically for an affirmance of the district court judgment below. The voltage source means limitation, which is the core limitation addressed by the panel in its January 2nd panel decision funding the only patent suit in this case invalid. It's one of five issues that we raised on appeal. If that subject to de novo review, even at the highest level, at the ultimate claim construction level, is an easy case to invalidate the patent, and it would be invalidated on precisely the same grounds that the panel laid out. Let me ask you, assuming we were to say that we give deference to that factual conclusion, why does giving deference to that factual conclusion not change the result? There is no factual finding made by the district court that would affect the ultimate claim construction. The district court did not find, as LBC argues, that the term voltage source at the time of invention was synonymous with any particular structure. In fact, the panel decision didn't disregard or disagree with anything the district court said. It repeated virtually verbatim what the district court said and said on that very record, on those very findings, the patent's invalid. If you look at... So is your position that the factional finding in and of itself was such that it couldn't fill in the structural gap, or that you don't even have to get to that point because on the face of the claims, there's nothing that appears in the claims that would connote structure? It's actually both, but I take it in reverse order. On the face of the claims, there's nothing that connotes structure, and there's nothing the district court said that would satisfy this court's precedent or Section 112F in creating structure out of that language. And the way it sort of is most easy for me to think about, Your Honor, is I was in the district court when they filed their expert declarations, which are what they rely on for the district court's findings. And we said, these are fine. The expert declarations were put before the court, and the argument in the briefs they put before the district court wasn't that voltage source means resulted in the identification of a single structure. Instead, what they said, and what the declaration says if you look at it, is that voltage source means, if read by one of ordinary skill in the art, could mean a rectifier if you were using an AC power source. And so you could rectify the AC to DC current and meet the function of the limitation. Or it could be a battery, which provides DC current and doesn't require a rectifier. And as you talked with their expert, you found that they agreed it could also be many other things. So it's your position that the court's findings, it's not so much that you would ask that we find it to be clear errors, but you'd ask that we find that even if absolutely accurate, it's not legally sufficient. Exactly. And I think that's what the panel, obviously, wasn't deferring to the district court because under side work, it wasn't supposed to. But it repeated the district court's finding in the panel decision. And it essentially said that same evidence and statement by the district court that voltage source means, if read by one of ordinary skill in the art, could be derived to any number of structures. In fact, any and all manners of structures that would fulfill the function of providing a constant or variable magnitude DC voltage, anything would fill in that function. And so there's nothing in the record from the district court or from their expert that in any way overcomes the requirement. First requirement that if it says means, you can't get out of 112.6 without having plain language that identifies structure. And then secondly, as the panel also found, there's nothing in the specification that meets the requirement of 112.6 that you identify and specify structure in the specification. So I think that the issues before the court on the en banc petition are really quite important and do have a lot of effect on lots of cases. But in this case, it really doesn't. There's nothing that was said by the district court. And this is why you find in LBC's brief that they resort to misstating the district court's findings. They say that the district court said that the term voltage source means a rectifier and only a rectifier. But that's not what the court said. Mr. Ruth, you're arguing that we should modify FIBOR to provide for a deference to certain so-called factual findings. What does this do to the idea of uniformity, the purpose for which this court was created? One judge makes a finding concerning the meaning of the term, and we give deference to it. And then another judge does in another case. Where does uniformity come in here? Well, Your Honor, I think it's an important question because uniformity is a key goal of the patent system and a key purpose for this court. I think FIBOR meets, in a positive way, meets the goal of uniformity. But it does so at the expense of consistency with other federal court proceedings where Rule 52 governs and says that if there's a finding of fact, and in some instances, not often, but in some patent construction instances, there will be findings of fact based on extrinsic record. In those instances, we have to decide either to ignore Rule 52 or to make an accommodation with what we view as a fairly limited exception and that the Supreme Court decision in Markman II says will come up rarely, that you would be deferring. And we acknowledge, Your Honor, that it raises at least a theoretical possibility of two district courts coming to two district tribunals. My only question before this court is one of law. Isn't it a sham for us to give deference on this so-called underlying fact question? But OK, we'll give you deference, but if it comes here, we push that aside. So aren't we playing games? I don't think so. But isn't this just linguistic and a question of avoidance of no deference? I don't think so, Your Honor, if you narrowly cabin the exception and only give deference to what are true findings of historic fact made by a district court where they're judging credibility. I agree with you that if, as LBC certainly advocates, if you were to expand the scope of deference and call virtually everything a factual finding, which is LBC's position, everything's a factual finding, then there really is nothing left of the de novo review of the claims instruction at the end of the day. Well, could you explain to me, in your brief, you echoed something that the PTO also suggests, which is that questions of historical fact can arise and that those should be given deference when decided. I don't understand what that means. So will you explain to me what you mean by historical fact is? Historical fact is a fact that needs to be decided outside of fact. The patent can't answer the question, a textual analysis, and so you need to go to some extrinsic evidence in order to understand an important fact that is then needed in order to... Is the ultimate question of what one of skill in the arts thought the term meant at the time the patent issued a question of historical fact? No, it's not, Your Honor. It may be that what words used in a patent meant outside the context of the patent could become relevant in some context. But why isn't it always relevant? Absent a patentee acting as his own lexicographer, why doesn't the question devolve in every case into what did people of skill in the arts think the word meant at the time? That's the quintessential definition of plain meaning as I take it. Well, I think you need to get... One thing you'd want to know is what people of skill in the arts thought of a particular word. Most of the time that's not in dispute. Most of the time that's not. Really? Because, let's see, seven years on the bench, that seems to be all you all dispute about. Let's take this case for example. There is no dispute as to what voltage source means between the experts. That's why we didn't put in a countervailing expert declaration. They put in a declaration that voltage source means an AC source with a rectifier for a DC source like a battery, solar cell. You're right that at some level you need to know what voltage means, although most federal judges wouldn't need much help with that. There isn't really a dispute, so there's nothing to decide. There's no need to go to extrinsic evidence. You may have a tutorial or some assistance from an expert so that the judge in doing the textual analysis that claim construction requires for patents has a better understanding of the patent. But in most cases, we don't think there is a need to go out and, consistent with what the U.S. government and others have said, we don't think there's a need to go outside the patent itself. But what extrinsic evidence we're talking about is simply a dictionary. One side comes up with a dictionary and in fact at the time of the application file the other side has six dictionaries and the district court picks between them and decides which he or she thinks is more persuasive. Do you consider that a matter of which deference ought to be avoided? If there's a dispute between which dictionary is actually the one that you should control and the answer to that dispute is material to construing the claim, yes, that would be an instance in which there's a decision made based on extrinsic evidence. Well, there are lots of issues in which I think we would all agree that district courts are proving to the record and to testimony and so forth that we are not reviewing the uphold record. So why is the district court's expertise or position vis-a-vis the parties in the case different than the appellate court would be with respect to reviewing what dictionaries say? I agree that it's a fairly narrow reason for deference, but Rule 52a makes it clear that where the district court has compiled the record, it's been responsible for deciding whether you can put in dictionary definitions and it shows how many and how they'll be balanced. Well, then how does that differ from statutory interpretation? Because nearly every statutory interpretation case that we receive, whether it's on trade issues, harmonized tariff agreement, statutes in the veterans area, any of these statutes, we're almost always seeing the introduction of competing definitions from parties. We think you should adopt definition number one in Webster's and we think you should adopt definition number three out of this and that happens and that doesn't in any way implicate fact findings to which deference are given in the issue of statutory interpretation, so why should it here? In statutory interpretation and patent interpretation, what the word means or the term means generally isn't going to devolve to what a dictionary says or some expert says he thinks it means. It's going to be something that can be discerned from analyzing the text. Yes, but in cases when it does necessitate resort to dictionaries, which does happen a lot, not only in patent cases, but in the statutory interpretation area, in the statutory interpretation area, there are no facts. Still, no court in the country suggests that that converts any part of the statutory interpretation issue into a question of fact, so why would it here? Well, the only reason it would is generally when a district court has had to compile a record, there's some deference given, but in this case, if you have a district court who's compiled a record made solely of dictionary definitions, there's not a whole lot of deference that's needed. If the district court has picked a dictionary definition, and the reason why this court allows greater reliance on dictionary definitions is they'll generally not be wildly divergent. They're generally, I mean, you can argue over which one has the right nuance. But you still haven't explained to me why we should treat it differently in statutory interpretation that every court in the country confirms. I think what the court should do, if it's got extrinsic evidence that's been balanced by the district court, is say, we'll take what the district court did with those dictionaries unless we find that it's clearly erroneous. And it could be clearly erroneous, obviously. But having done that, or having taken into very rare case competing expert testimony, which I think is even more rare, there would be some deference given, and it would present some difficulty with the concept of uniformity. But it's a difficulty that we think could be accommodated without undue prejudice of the patent system. Can I go back to one of the earlier questions that Judge Moore asked? Because I was having a hard time understanding the difference between saying the ultimate question is one for de novo review, but yet the question of what one in the art understood a term to mean is somehow a historical fact. I think maybe there's a different distinction that you're drawing, and I'm trying to understand that. I mean, obviously what one would have understood a term to mean in the context of the intrinsic record of patents, the prosecution history, et cetera, that is ultimately the question that you're suggesting we should review de novo. Correct. So do I understand you simply saying that if one of the factors that goes into that analysis is whether or not there was a specialized meaning to that term during the relevant period of time in the art, that that is what would receive deference? But if that, even getting deference, would conflict with the intrinsic record, then it's not legally significant. That's correct. You defer to a factual finding that there was a specialized meaning, but you would then review whether that specialized meaning, the finding that comes with that specialized meaning in fact results in the proper interpretation, because it's quite possible that in the context of a patent, that specialized meaning hasn't carried through. I think some of the phrasing in your brief and some of the amicus briefs was not clear about that distinction, and they seem to be collapsing the two. So it seems like you're asking for one standard of review for the same, two different standards of review for the same question. I want to be clear. In our formulation, the only thing that would get clear error review would be if there were some facts in the world, and probably a common one wouldn't happen that often, but it would be one of the more common, would be a specialized meaning for a term that had to be resolved in order for the claims instruction to be determined by the court. And then the first step would be, what did the district court say the specialized term, that there was a specialized term, what did it mean? And then that would be given clear error. Well, for instance, if there's a word that's used in the technology industry today that we all understand to have a particular meaning, if experts said that actually it didn't have that meaning back 15 years ago, that that's the kind that's factually free. Conceivably, you'd have two experts that disagree with that, and a district court judge would have to listen to the testimony and make a decision. That could be a clear error review. But that still wouldn't answer the ultimate question. This part of it still has no overview over whether the district court taking that fact had applied it appropriately in the context of the patent to reach the outcome. I think an example that may be helpful, the Rembrandt case, which is somewhat parallel to this and was relied upon by LBC. I think one of the claim terms in a means plus function claim was trellis encoding means. Trellis encoding means doesn't give me any understanding of whether they're structured there or not. They took expert testimony. Expert testimony was in art at the time. The term trellis encoding meant a particular algorithm. It's not a mystery to somebody who's going to the art. When you look at that, you're not seeing, as in this case, that an expert could figure out lots of different structures. You have a defined structure that's being identified by the term, the claim term trellis encoding means. Mr. Ruth, I don't know if you're familiar with our veterans cases, but we have no right to review fact questions and even applications of law to fact. And the skillful lawyers representing veterans come before us, and point number one is this raises an issue of law, not fact. They want to convert fact questions into law questions. How are we going to end up with the same point here, whereby issue number one regarding claim construction is that this is fact, and we're going to have to... There's already a level of complexity. Yes, that's where you'll end up, and you've already ended up there. That's what's going on in this case. We have a party telling the court that voltage source has a specific meaning of a rectifier. It didn't say that in its briefs until after it was lost in the trial court and found out that that wasn't sufficient to get it past 112F review on the trial court's first claim construction. But the difference is we don't have to defer now under a precedent. Sure. What you will need to do under our... Why are you not arguing for the retention of five years? You're having trouble making these distinctions, and a lot of judges have asked you questions about how to do that. Why are you not arguing for the retention of five years? Are you assuming that the court's already decided that? No, I'm not. What I'm assuming is that there's a real need to take account of Rule 52. I'm in the same position, and our brief was filed before, but the same position that the United States government's in. I actually think five-year works pretty well. It's simple. It does give you uniformity. It does allow you to vary the deference given to district court's findings based on the weight that can be given that we discussed in our brief, the length that Judge Michel talked about. I like how it works. It just runs up against Rule 52A. And as a trial lawyer, my instinct is let's see how difficult it would be if we carved out a narrow exception that actually... Let's experiment and see how difficult it would be to change it. My view would be that because if this court carefully limited and didn't allow people to come in and say everything's a fact, first we need to show that there is a specialized meaning to a term before you get an expert who can testify what the meaning is. That didn't happen in this case. There is nothing from their expert, Robert, at the time. Can I ask you a question in the same line? If the debate is between leaving Cyborg alone and your position of creating what you keep insisting is a tiny exception about which will hardly ever arise, where there will hardly ever be a basis for disagreeing with a district court who's going to rely ultimately on documentary evidence, do the standards for stare decisis justify our actually overruling, not clarifying, but overruling one of our en banc precedents? And if so, why? I think this court en banc has the ability... I know we have the ability, but even having taken the case in the ordinary course, a non-constitutional precedent, again, we're not talking about clarifying something left unclear. There's a fundamental question. Cyborg said X. You're asking... You even are asking us to overrule it, to change something. Why would we do that? And what are the... I mean, has the Supreme Court done something in the interim? Has Congress done something in the interim? Has it proved unworkable in this, what you say is a tiny margin of change? When I talk about the small number of cases I've referenced, the Supreme Court's decision in Markman, this court's decision itself, there's been a fair amount of precedent. I just might add that if you can limit the number of instances in which extrinsic evidence, disputed extrinsic evidence, really becomes critical to claim construction. So I do think it's really small. Again, I think if you left Cyborg as it is, it would not be a policy disaster. It may be a difficult thing to reconcile with the way we generally treat district courts on hard-finding the fact of credibility being an issue. And that's really the case. You're into your rebuttal. Would you like to say something? I would like that. I appreciate that. Thank you. Mr. Dewey? Mr. Chief Judge, and may it please the Court, I'm Andrew Dewey, arguing for Eileen Dowell's control. Judge O'Connor instructed the jury in this case that multisource needs is a rectifier. ULT did not object to that instruction. At the close of evidence, ULT did not move for Jane Wall on the construction of multisource needs or the issue of indefiniteness. At that point, that became the law of the case. Seeing this waiver, ULT now makes a backdoor attempt to rectify its own failure to present this issue for appeal. In so doing, ULT runs headlong into Ortiz and then into Rule 51. Cycler and Ortiz are closely related. Cycler causes this Court to make the wrong analysis under Ortiz about whether or not a denial of summary judgment is an appealable issue. That is what is going on here. This is an appeal from the December 2010 Markman order, denying summary judgment unadopted. The case proceeded after that, and yet ULT makes its appeal from that on the ground that it was there for Judge O'Connor not to grant summary judgment. That is clearly prohibited by Ortiz. So is your argument that in answer to the en banc questions, you think we should overrule Cyborg and give all kinds of deference, but you don't really care because you think we should revisit the panel's conclusion as it relates to waivers? The basis of the panel's decision not to apply Ortiz was that pen construction is a purely legal issue, which is of course what Cyborg requires. But Cyborg's wrong about that. This is a mixed question of law and fact. It is not a neat, abstract issue of law, which is the standard. It actually wasn't something that Ortiz said is appealable. He just said that is a circuit that we're not going to visit because it doesn't apply here. So you're saying we would have to overturn Cyborg first in order to support your waiver argument? Well, frankly, Your Honor, I think even under Cyborg, it's not the sort of neat, abstract issue of law that was mentioned in Ortiz because that is something that's really divorced from the factual record of the case. We've seen examples. I think in Ortiz itself, the state of law about what a prison official's duties are with regard to inmates, the circuit case, he fell to be felled, whether a condominium owner can use reasonable force to kick somebody out of a condominium. Those are abstract questions that apply in a lot of cases, and they really have nothing to do with the evidentiary record of the case. That's never the case in claim construction. Claim construction is always an evidentiary inquiry. Now, it might be intrinsic evidence, but what is evidence? Evidence is— This is not a situation where a trial judge denied summary judgment and the party failed to pursue the claim, which they lost summary judgment. This is a situation in which, because of the claim construction, the court found the claim to be definite as a matter of law. No, I don't think that's correct in saying that they made that as a final finding. Certainly, it denied summary judgment. In other words, there was not a basis at that point in the record to grant summary judgment, but ULP proceeded after that and certainly didn't treat that as a final judgment on the issue of indefinite disorder, even on the claim construction. Months later, ULP did propose an expert about that very conversation and moved again in 2011 for summary judgment on the issue. Have you ever seen a trial court that allowed someone to try the case based on a construction of a claim that differed from the trial court's construction? Top 40 of these fiscal systems was a case where, under this court's decision to be safe services, the trial court had to distribute a 112-F claim and, despite that, submitted the question to the jury. On appeal, a two-to-one decision, that was a review of the Jamal Court of Arbitration. The trial court had sustained, on substantial evidence grounds, the jury's finding on indefiniteness. Asking this court in California, did not find anything proprietary in that procedure of submitting to a jury on indefiniteness after a claim construction finding. In fact, it was a one-to-all fix issue. Counsel, I'm having a hard time following your argument. Are you saying that all issues involving claim construction are questions of fact? Let me be more specific. What about looking at the specification and determining whether that specification contains sufficient structure? That would be the most intrinsic sort of construction. Yes, that is still a finding based on documentary evidence. The proper frame for analysis here is the Supreme Court's decision in Southway of Virginia College, where we have a mixed question of law and fact. What is the standard review? It's not an easy question for this court to resolve, but Southway of Virginia College gives you the two prongs to consider, and if either one of them apply, a deference is appropriate. Both of those prongs apply here for reasons members of this court have been noting for a long time. So yes, even an intrinsic construction, the most intrinsic sort of construction, that still involves questions of fact. Now, we learned from Bose v. Consumer's Union, for instance, that clear air has different levels of presumptions of correctness. At one extreme, we have credibility determinations, which are given the highest presumptions of correctness. But Bose also teaches that documentary evidence, findings based on documentary evidence, are What if we had a contract case, and we're interpreting the terms of a contract? Would you say that those interpretations, those are findings of fact, or of law? If we're staying within the four corners of the contract document, is that what you're talking about? Yes. Then I think that, no, that is truly an instrument where we're consuming potentially any claim within it. But the difference here is patent. So that would be a question of law? Yes. What's the difference, then, when you're looking at the four corners of a patent? If we're going to make an apples-to-apples comparison of the patent document, the only claim language is really the contractual language. Everything else is essentially analogous to plural evidence. Every patent comes with its own plural evidence. And as important as the written description is, when it comes to claim construction, it is really the source of the document. We always call it intrinsic evidence. What kind of evidence is it? It's documentary evidence. That's an extraordinary comment that within the written description is analogous to plural evidence. Isn't it clear that patent claims are written in conjunction with the specification to reflect what the specification says? And plural evidence is an entirely different story. Well, certainly it's the most important evidence when it comes to understanding the claim language. But it is still documentary evidence. We call it intrinsic evidence. So the question is, what kind of evidence is it? I don't know how it can be anything other than documentary evidence. So I don't think it's that extraordinary to compare it to plural evidence. And of course, we don't necessarily stop at that written description. We sometimes go to the prosecution history, and we still call that intrinsic evidence. Sometimes we go to extrinsic evidence. So counsel, it seems like if we were to adopt your argument, then we'd also be overruling Phillips, wouldn't we? Not at all. There's nothing that would disturb the hierarchy that this court has established, first and foremost, and modified a bit in Phillips, that the hierarchy is still in place. But the hierarchy is established in Phillips in order to distinguish questions of law and to establish the intrinsic record and that questions related to the intrinsic record are legal questions. I respectfully disagree that that was the rationale of Phillips, to establish it as a question of law. The court actually asked for an amicus briefing on law, fact, issue, and deference that showed how to deal with that. The point of Phillips was to, I think, try to deal with the concern about which evidence has the highest importance and the importance of plain language versus written description alike. I don't think there was ever really an effort to make this fact law distinction like we had in the sideboard. I just don't even understand how we could possibly, even if we wanted to, do what you're asking us to do. In light of the Supreme Court's language in Markman, the penultimate sentence in the opinion is, treating interpretive issues as purely legal will promote, though it will not guarantee, intra-jurisdictional certainty through the application of stare decisis on those issues. That is the second-to-last sentence. The very next one is, accordingly, we hold this interpretive issue is for the judge. This issue, this legal issue, you want us to conclude that the ultimate issue is one of fact. I don't see how we aren't expressly prohibited by the Supreme Court's Markman decision from doing that. The court was clearly referring to the difference between who the fact finder, the question of who the fact finder should be, judge or jury. There was never any effort to determine the relationship between the district courts and this court. They referred to the interpretive issue. Treating the interpretive issue as purely legal will promote intra-jurisdictional certainty. They're talking about us. There is no other intra-jurisdictional certainty, right? We're the only intra-jurisdictional place. Well, it's just one, the government sentence brief, that's the question that we're going to issue. It just went out before the Supreme Court. And I think the problem with Markman is that if you take language in isolation, as everybody does, as this court did in 1998, the sidebar itself, and view that as a complete affirmation of everything in rationality, if you isolate certain parts of the decision, you can get where you want to go. But the fact is the Supreme Court was not considering the issue of deference. And the tricky question that mixed back and forth about whether that should be reviewed is that. Well, they weren't saying that you, I'm sorry, is there anything that you wouldn't have us get deference to in the process? Right. Any inquiry, any resolution that the court makes, is there anything under your theory that doesn't get deference? I think every kind of instruction should get deference. But again, I think both the consumers even teaches that that deference can be rather thin if it's based on documentary evidence only. And this court might flesh that out in the context of Kavanaugh and say that, for instance, with Judge Brady's example, if it's the most sort of intrinsic example of construction, then that might be different. That might be a very thin sort of deference. And this court has unanimous prejudice. How would that lead to predictability? What is thin deference? Is there a thick deference? Well, I think that's what this court decides, mainly in future cases, as to how much deference to give. But both the consumers even give the court that opportunity to adjust the presumption of preference. I think also, as you mentioned about Boas, is that Boas talked about how deference could be, the presumption might vary depending on how much effort the court put into it. How long the case went? Did the case go for weeks and months? Or did it go for 15 minutes? That's a quote from Boas. So I think there's a lot of tools within the Salve Regina College case and Boas for this court to get to that result of very thin deference, much like Professor Kavanaugh was saying. Mr. Ruth is saying that the change is micro and incremental. And you're saying the change is macro and massive, all across the board. I don't think it's macro. What I just mentioned, as well, I think in that situation, it's something, and I think Professor Kavanaugh refers to it as something approaching an overview. It's a thin sort of deference. What's he cite for that purpose? I'm sorry? I said, what's he cite for that purpose? I'm not sure if he has those in the brief, but I think that's the idea, that the clear air standard does not have a uniform presumption of correctness. It can vary depending on the sort of evidence we're talking about and other factors, which I just mentioned. I think he cites his own article, is what I'm saying. I think that maybe your choice of words is a little bit odd. Thin deference? I mean, are you saying that it's just easier for the court to conclude that something is clear error because they're looking at the same? I really don't understand what you're saying. I think there's two ways of expressing the same idea, Your Honor. I think it's useful to just say it's the same standard deference applies across the board. But then, using the language of the Supreme Court in Bose, talk about how that presumption of correctness can vary depending on the type of evidence we're talking about and other Well, you know, in every instance, even where we do normally give deference to a lower tribunal, we don't give deference to sloppy opinions or things that aren't thought through or things that aren't explained. I mean, I think that's just common sense. But I'm not sure that that's a legal standard you can apply to differentiate when you give deference and when you don't. I think Bose completely justified that approach. Is thin deference what some of us have called informal deference? The problem with that, though, is that there is the official standard of review of the court. It's the official position of the court that it's not giving any deference. It might be even indicative of something that says, well, we don't really mean that. And I don't think that's the right way to go. It's not. Rule 52 is not something that can just be ignored. It is 52 points of fact, right? Absolutely. And this is always an evidentiary inquiry. Even if we call it the most intrinsic evidence involving the point construction, it's still evident, which is something that tends to prove or disprove a fact. We don't have evidentiary inquiries about, for instance, statutory construction. We don't talk about making factual findings about it. That's law. This is all about what someone having ordinary skill in the art knew, how they would perceive this language at a particular point in time. If point construction is ultimately law, why isn't a portion of point construction, construing a portion of the claim, similarly law? I don't agree that point construction is ultimately purely legal. I think that it is a mixed question of law and fact, and that's before the Supreme Court framework in Stellar didn't publish. If it's a mixed question of law and fact, then, and you've described to us what the fact is, where's the law in claim construction? The fact is in the interpretation of the claim. No, no, the law. Where's the law? The law is what I was going to say. The law is an application of the Supreme Court's understanding of point construction. So we don't stop necessarily at what that understanding is of this hypothetical person. We then apply our point construction doctrines at the canon of point construction. So that's the mixture of fact and law. Do you foresee any role for the jury on even the most extreme factual contribution to an underlying dispute? Is that an obligatory or permissive jury contribution? I think that's the one thing we can say that the Supreme Court decision marked in result conclusively and unanimously, that there is no role for the jury on claim construction. I do not see it as an opening there to say that any factual finding in terms of claim construction can go to the jury or to the Supreme Court's decision. Mr. De Leon, do your theory are competing legislative histories historical fact? No. And the reason for that is that that is the most legal sort of legal issue of what the general application. We can't have different ideas about what that law is based on factual findings. But to get back to this idea of uniformity... I'm sorry, can I just stay with that? A patent is a rule of exclusion good against the world, against complete strangers to the process of creating it. I mean, it may be of a narrower application than most statutes, but perhaps the Harmonized Tariff Statute, there are provisions in there that have comparably narrow applications. But isn't that the essential basis for treating the patent claim as a law? It's a rule that says everybody, without getting permission, stay out of this territory issued by the government for some number of years. Forgive me if I'm misinterpreting, but I'm hearing very similar questions that Judge Lurie was asking about uniformity, so that we have different ideas about what this claim might be to me. In one case, you can have a different construction in another. That presents a potential problem in a way that we do not allow with statutes. That's one reason for it, but I thought you just said, oh, a statute is law, a patent is not law. It's a legal prohibition, without getting permission, on complete strangers to either the patentee or to the process of creating and issuing the patent. I'm doing something. Go ahead. I thought Judge Merrick would update. Patents are not maybe statutes. It's a very different thing to talk about civil liability and a potential injunction that might go against the private party, as opposed to a U.S. statute that covers the entire nation. I just think we're dealing with fundamentally different things here, and the need for uniformity is far greater when we're talking about laws in general that apply to everybody in the country. But does the patent not apply to everybody in the country? Of course. I mean, first off, I'll come back to this idea of uniformity and the potential that maybe we could have conflicting findings that are both upheld on a clear air standard. But we asked, what is an example of this? The best that we could come up with was the American Children's case. But in that case, we knew there were minor differences between the Louisiana and California courts. Ultimately, they both reached the same non-deterrence finding, and this court reached the same result under either standard review. Ironically, as the Chief Judge pointed out in his sentence I wrote, the one example of a lack of uniformity was actually caused by the no standard review in CBI beta benches. In that case, we had district court recent claim construction. It is affirmed on appeal. Second district court goes with what the first district court and this court did in a panel decision. Then this court has a second panel decision and reversed. And it's an explanation for why it was going with a very conflicting construction with the first panel. It's that the record had developed better in the second case. And the irony is that the only record it pointed to was a written description. And so that's the only example of lack of uniformity out in the world. And it was actually the no standard that caused that lack of uniformity. If we were to adopt a position, what would be the outcome? And we decide light and balance. What would be the outcome of that case? Of this case overall? Yes. So I think it's really important for this court to understand that these issues are not the first three issues before the court have been waived on two different grounds. It doesn't even have a subject matter jurisdiction to review the first three jurisdictions. Assume that we're just talking about the merits of the appeal. Well, on the merits, I think all of these constructions are easily, they're defensible under any standard review. But they're easily defensible under the generic standard review. Let me ask a question about the facts of this case. This doesn't sublime the issues that we've been talking about. Do you contend that the term voltage source or the term voltage source means is a term of art in the lighting industry? It is not used monotonously, but it does denote structure. No, you're not answering my question. Is it a term of art in the lighting industry? You mean in a common parlance? You know what a term of art is? Is it a term of art in the lighting industry, voltage source means? Not the way I understand that. It is something where the words themselves define classical structures. And that falls under lighting world and MIT as taking this out of mean plus function framing rules. When you say defined class of structures, it's a nice phrasing because there are some of our cases that talk about a defined class of structures. But in those cases, the structures weren't completely alternative from each other. And so that's what I'm having some trouble with. You say, okay, there's a structure that's defined, but you try to call it a defined class, but here it's a rectifier or the other. I should have clarified. I was using, I was quoting the language from lighting world and MIT. In our case, it's one structure. It is simply, it's a rectifier. It's the only thing that can be given the intrinsic record of this power. Well, why is that true? I mean, if it's an AC source, it may be the rectifier, the voltage source. But if it's a DC power source, we're talking about a battery, solar cell. We're not talking about a rectifier, correct? That's incorrect in the context of this pattern. What do you mean incorrect in the context of this pattern? Your own expert said that where the DC power source could be a battery instead of a rectifier, right? I think there's a misunderstanding of what the expert is saying. It's not the expert's opinion. It is stated explicitly. What's the misunderstanding about that? Because in the later page, he explains that looking at the context of the record here, the structure is closed. It has to be a rectifier. We have the AC power lines. We have DC input terminals. Only one thing can make that jump, and that's a rectifier. Not all power sources are AC, right? That's correct. And doesn't the patent cover both AC and DC power sources? Yes or no? It does not. It does not? It does not cover a DC power source? That's the problem, that your expert testified that it could be a rectifier, but it could also be a battery. And if it's a battery, we're talking about DC voltage. And what we also never did was ask the real question, which is, in the context of this patent, does this language by itself define class disruptions? Did you participate in that deposition? No. Did counsel object at that point as misleading? I believe that there were objections to that deposition. That deposition occurred after the decision on the appeals for the order of commerce to their appealing. That deposition occurred in 2011. The order of commerce to their appealing was in December 2010. So it's ironic that we're sitting here in front of the sideboard talking about an evidentiary record that came after the order for which it's appealed here. Yeah, but putting that aside, even when the court did its claim construction order, the court itself referred to a variety of topical structures. Did it not? The court actually narrowed it. The court looked at what Dr. Roberts had testified, put in a declaration. And at that point, Dr. Roberts had some caveats about a battery. But if you look at the finding, and as far as what was found, I refer you to ULT's opening brief, page 13. In so doing, the district court, a lot of Mr. Bobel was at the session this morning, had a declaration from LBC's litigation expert that construed voltage source beams as a rectifier. That is the finding that's under review. That's the construction under review. Rectifier. Not rectifier. I'm not joking. But there's two different questions. Again, even if you were right that we shouldn't have looked at the deposition, and even if you're right that there wasn't anything more in what the court was relying upon in the first instance, and we said, okay, it's a rectifier, and that's what it would be, how does that still answer the question of whether there's structure in the claim language that overcomes the means presumption? Under MRT and lighting rule, if the language itself can be given in video, we can look at the intrinsic record after this purpose. If the language of the claim itself can instruct the structure to one skill or the other, then that right there takes it out. This goes back to Judge Stokes' question. Don't those cases really say where it's a term of art? Rembrandt was a bit like that because of the algorithm of the language. But lighting rule and MRT were not like that. Isn't voltage source a generic term and the term means should never have been put in the claim? Means actually really doesn't add anything to the claim. Imagine where we'd be if it had just been voltage source. It doesn't mean anything unless you're trying to invoke Section 112.6. And what would the purpose of that be when every balance since the beginning of time has had a rectifier? There was no prior RBC or anything. Every balance has had a rectifier? That's not true. That was the testimony in trial and not disputed by the jury. In a hospital where you have a DC power source? It goes through the rectifier. You don't get the exclusion of a rectifier. Can I ask you something? I thought I heard you say in your explanation of your expert's testimony about why this term was limited to the AC power source and therefore to rectifier. You kept saying in the context of this patent, suppose we were to think that any change in CYBOR was limited to the meaning of the term outside the patent, historical finding in the term of our industry, but in any event, not your broad position that you take account of the whole thing, the whole intrinsic evidence, but just a question about meaning before you start looking at what the context provides. If I understand what you said, your expert did not say putting aside the context of the patent, this term outside the patent would be limited to a rectifier. The way I read the expert declaration is looking at particularly how we have AC power lines. In the patent? Right, which is of course in the written description. Okay, so your position and your characterization of his testimony really does depend on treating as a factual matter, an analysis of the term in the context of the patent. I think that MIT and lightning will certainly stamp the proposition in court. I mean, how is it possible to look at plain language in isolation to see if somebody, you know, that's true or not, you can't just simply look at plain language. So it might in fact be a very difficult thing to draw a line to keep this fact characterization very narrow, caverned, and relevant to the ultimate outcome? Just on this particular issue, I think it's the very nature of plain language itself, really lends itself to extrinsic evidence because it's something where it's very important, I think, to put the point in that extrinsic direction. But I don't think that that's the typical situation across plain construction in general. I think quite often, and we see other plain constructions in this case, quite often the specification is as far as the written description is as far as we go. So what you're saying is that your expert interpreted the plain language for us and for the district court in the light of the specification, and that should achieve, receive deference, right? Well, it should, yes, because it values the proper analysis under inventio and it reaches the result of construction relating to MIT. So when we look at that comparison, then do we, is that a question of law or what effect? Again, I contend that every construction is a question of fact, and then we can mix questions of law and fact once we apply it against a plain construction. But in my remaining time, I wondered if I could point out that, again, this court has two different ways to head into other circuit decisions to the extent that we don't see an argument that these issues are not related. The Ortiz issue and the charge rate issue are actually two separate areas where this court will be up against the weight of other circuits. We've talked about Ortiz. Also, on charge waiver, the amendments to the 2003 Amendment to Rule 51 have eliminated this utility defense. And I've talked to you of more subtle practice, 51.33. It's over on that. The remaining authority that's out there for the objection that would have been appealed is very questionable after the 2000 amendment, and any effort to make this a utility protection would conflict with the First Circuit, the Third Circuit, Intercontinental Enterprises, the Fourth and Fifth Circuit, the Amendment, the Sixth Circuit, Aetna, Lady Construction, the Seventh Circuit, Consumer Products Regents, the Eighth Circuit, Star City Rent-a-Center, the Ninth Circuit, Metronic, U.S. And you can take a look. One thing I want to say about that is 1997, U.S. Supreme Court of Johnson v. United States, no utility exception in a criminal case. This was a very sympathetic situation for that criminal defendant. The question is whether or not the issue of materiality should go before a jury. No objection. Justice decides materiality. Goes up to the Supreme Court. Waiver. And the funny thing is that issue of how materiality should go to the jury, that wasn't resolved until after the conviction. So if the Supreme Court isn't going to let a charge waiver go through in that sympathetic situation, it's certainly not going to let it go through with a big company represented by a business law firm that makes a strategic decision at trial. Thank you. Thank you. Mr. Keller? Thank you. After the discussion so far, do you feel like maybe you're sitting at the wrong table? No. Can I ask you the same question I think I asked at the beginning on a subject that, if I remember right, your brief doesn't discuss at all, what are the standards for stare decisis for us to overrule a clear, unbounded decision? It's not just that we now think, eh, not quite right. Your Honor, what I would look to is the basis for that decision. I think that a fair reason to sideboard with the basis for the decision is that it was compelled by market. And to the extent that this Court wants to revisit that issue along with the other issues... Again, I understand about to the extent we want, but stare decisis sets a certain pretty high bar for a non-constitutional reconsideration of a clear decision. Again, this is not clarifying something unclear. This is actual overruling. And ordinarily there has to be some intervening development from Congress or the Supreme Court or other holdings in cases or some demonstration of unworkability. There's a litany of things you consider in stare decisis, none of which I think you even advert to in your brief. You're just saying, we think the answer was not quite right. It should be tweaked. I don't understand quite how that's the question, as opposed to whether there's an error that we should correct under governing stare decisis standards. Well, Your Honor, I think the notion, the idea behind stare decisis is to keep the law moving on a path and to not disrupt that. And I don't know that this sort of change is disruptive. I think what the change is, is correct it and move this Court law back to where it should be to recognize how plain construction actually operates in the real world. We're not always going to have time to do that. And in fact, ideally we shouldn't. But a patent is for people to read. It's a public notice function that people should be able to read the patent. Well, don't you think it'll at a minimum be disruptive, which you just said it wouldn't, in the short term while there is an enormous amount of back and forth, because it'll only evolve through cases, in which instances there should be that small number of cases that raise facts and in which instances there shouldn't be. And during that time, won't everybody be flooding the record with tons of things they say are facts and trying to encourage district courts to rely on them to fall within that small sliver of cases? Well, one of the points we tried to stress in our brief is that we don't think the existence of a subsidiary question of fact should turn on what evidence is introduced. We think that there actually has to have been a fact-finding made and that that fact-finding is discernible on the record. Now, when we talk about a fact-finding, we use the phrase historical finding, fact-finding. If we're looking at something outside of that level, we want to know if something was actually true at the time, so evidence is looked at, testimony might be heard. That is, in all logical senses, an inquiry into a factual matter. What's an example? An example would be if there is an understood meaning in part at the time about a particular term, and I'd like to go a little bit deeper on that, because the interesting thing I'm trying to argue is about competing dictionaries. Suppose there were competing dictionaries, and suppose the district court made a finding. That finding would be, I suppose, what the majority dictionary definition is. I don't know that that would get you to a true subsidiary question of fact, because the fact that some dictionary drafters had a view of the term doesn't mean that that term had a recognized meaning in the art at the time. Mr. Kelly, are you telling us that whether a particular item or dispute is a question of fact depends on whether or not it depends on evidence within the patent document or outside of the patent document? It depends on what it is that's being found. If what it is that's being found is reported to be what this term means in this patent document in light of the intrinsic evidence, that's clearly not a finding of fact. That's a hypothetical analysis of what a legal ghost would think. So from a practical viewpoint, do you envision a procedure rather like a Markman procedure that comes first where we debate whether something is or is not a question of fact? I think it would be within the district court's discretion to, after reviewing the intrinsic evidence, see if this particular issue is not entirely clear. We can't know that at the outset of the patent office because we don't know what's going to happen now. We don't know where the particular... I mean, the question isn't the scope of like this. The question is one little part of the scope, whether it touches on the human rights advice or not. And if the district court says, you know, I just can't necessarily figure this out and I'm being pulled by these experts or by these lawyers first, if this term had a meaning at the time. So let me first author some evidence and decide first if that's true, if it had a meaning. And if it did have a recognized meaning, then I can make a finding on what that is. And then, if that finding can be balanced with all the other legal standards and plan construction to determine the final outcome... So let's say the court decides that it did not have a recognized meaning and therefore it's appropriate and essential and routine to balance the views on each side. Do we now have a question of fact that takes us back to the Seventh Amendment? Well, even if we did, it wouldn't take us back to the Seventh Amendment because of the holding in Markman, but we don't. We don't have a question of fact. I'm not so sure that Markman made that clear, the distinction, as clear as you are now asking us to make. Well, Your Honor, I think what Markman did quite clearly, and I think this is in footnote 10 of Markman, was to say that the Supreme Court did not view this line between fact and law as the line between judge and jury in this instance. But you're asking us to draw a line, a fresh line, a modified sidewalk, and to draw new lines. I'm not asking the court, and the government is not asking the court, to draw a line between judge and jury. That line is as clear as day. What we're suggesting is that there are logical findings of fact that sometimes occur in plan construction analysis. When they occur, this court should accept them as true, unless they're clearly erroneous, and then conduct a formal de novo review. Suppose a term in an arguably means-plus function case did have a mean in the art, and the district court found it. That might be true, but this court still needs to go through a means-plus function law. Was there a mean view? Is there a presumption one way? Is there a presumption another way? But aside from means-plus function, isn't it the job of the specification to tell how to make use and describe the invention, and to tell what terms mean? And if they don't do that, isn't that a failing of the patent with the obvious results? Of course that's the role of the specification, absolutely. And, you know, I'm hesitant to say it's a failing of the patent because the future is not ours to see. The patent's written, the claims are written. That sounds like a popular song. I thought you weren't talking about the future. I thought you were talking about the past. If we're talking about the meaning of a term in the past, isn't that something the patentee should have anticipated? Your Honor, the patentee, I don't think it's fair for the patentee to anticipate how someone's going to try to design or have their plans. You know, the idea of the patent system itself is we put the knowledge out there. Patents aren't statutes. They're not contracts between legal parties. Well, they're close to both, aren't they? They're similar to both, but what they really are are documents written by people still in the era or people still in the era. The purpose is to convey an idea, a new idea, to other people. And then business people should theoretically, with their technical people, be able to read the document and figure out how to get around it. I just don't understand the historical fact question. I don't understand the characterization. I'm really confused about this language, and I'm trying to understand it. But it seems to me what the meaning in the art was to want to fill in the art at the time is the ultimate inquiry in almost every patent case save for the patentee acting as his own lexicographer. So if that is a question of fact, I feel like I must be misunderstanding the PTO's views because you two are representing a small sliver of a change. But yet if I adopt what I'm understanding as your historical fact argument, to me it's the whole ball of wax. So I think I'm misunderstanding you, and I want you to explain it to me so you make it clear why it's a small change and it's not the all-the-time inquiry. Your Honor, I would start with the observation that lexicography is not the only legal candidate construction that comes in at the end. There's lexicography, there's claim differentiation, there's disavowal, there's what happened during the prosecution. So even if a claim term had a meaning in the art at the time, that's not the ultimate question. The ultimate question is what does the claim mean in this specification with this prosecution history? Now, what the historic fact would be, for example, suppose a claim used a term like high-pressure valve, and the patent was directed to a certain plumbing situation. And evidence comes in that says, you know, I was a plumber in the time. I had a truck and I had a drawer that said high-pressure valve on it. We all did. And this is what a high-pressure valve was. And let me show you my manuals about how we did our operation. And it said high-pressure valve, and everybody knows this is what a high-pressure valve was. The district court can say, okay, that's enough. I accept that when this application was filed, the term high-pressure valve existed in this part. And as a fact, this is what civil partisans understood that to mean. But I'd like to also try to make it clear that this hypothetical objective person that doesn't really exist and what he may have thought the term meant was not a question of fact. It's not moving forward. I'm sorry. It's not moving forward. Maybe that's the distinction that I'm not making well enough is that what we're looking for is the actual existence of a hard recognized definition, not what would someone of skill in the art have thought this meant if they could take a time machine back and tell us what they thought it meant then. We don't care what they thought it meant then. We want to know was there an art recognition. So perhaps, as with my discussion with Mr. Roof, you overstated your case when you were describing what a historical fact is, because the ultimate question is what one of skill in the art would have understood the claim to be in the context of the patent, the justification, prosecution history, etc. But you're saying – so you're not saying that is the question that you think is a historical fact, right? So the question you think is a historical fact is simply whether or not it had a specified meaning, which could be meaningless ultimately if we concluded that everything else about the patent conveyed a different meaning. Yes, we agree with that. And a court might look back at your evidence from competing experts, and one expert said it had a meaning and this was it, and the other expert said it had a meaning and this was it. And the district court judgment said, well, I'm able to figure out which one of you I believe about what you thought the meaning was, but I'm not even convinced there was a meaning. Because I just hear two people telling me what they each thought their meaning was, and I don't see any evidence that it was an art recognition. Have we ever had such a case? We couldn't find one. So we've all gone back and sort of tried to look and figure out to answer this exact question, what are the cases that would have come out differently? And, of course, cases weren't written this way, and we don't know – first of all, we don't want to cast aside the true inquiry into whether or not clear error was made. That is a genuine inquiry that is made. So we can't assess whether a clear error was made just because we can't assess it in this case, because that's a review of the patent. Except by analogy, you'll find that in customs classification cases all the time. Competing classification experts who are talking about specifically what the words mean. And, Your Honor, I accept that when that happens, an intercourt can take which explanation they think is more sound, but I think that there's sometimes another issue lurking, which is was there in fact an art recognition at all? And if there wasn't, then that fact isn't particularly helpful to what one's building the art would have thought at the time. I'm over my time. May I raise one additional issue? Please do. Several of the amici have raised the concern that if facts were fine to give any deference at all, we're going to have a problem where panelists in this court have to affirm contradictory claims that are considered one after the other. That may or may not be possible, but we don't think it raises a significant policy concern, because as a matter of collateral estoppel, once a claim is dead, it's dead. No one's going to bring a claim back to life with a subsequent claim of destruction. The same thing goes for claim of destruction. But that only works one way. Exactly right. It only works one way. So the potential for conflict does exist. The potential for conflict does exist, but the existence only serves to benefit the public. And let me tell you what I mean by that. If the first defendant does not muster the right evidence, does not discover that the patent artwork might be in it, the second defendant shouldn't be stopped from saying, you know what, that's not what that term meant. The term meant something else. I should have a fair opportunity to demonstrate this patent is in value. We don't think that that raises a significant policy concern. Now, it's true that the patentee, having lost his fight the first time, is not going to bring his patent back to life, but that is not a significant problem for the public. In other words, where these issues might flip-flop, if they do, the effect is going to be a ratcheting-in of the exclusive right of the patent and not a surprise expansion of that right to a subsequent case of destruction. That's the point. And we'll end the court with these questions. Thank you, Mr. Kelly. Mr. Root, you have six minutes and 45 seconds. Thank you. With respect to waiver, because the court hasn't asked that to be addressed in the Alabama argument, I'm not inclined to address it unless somebody wants me to. Let me just ask you one question. Do you think that the waiver analysis done by the panel would be different if we overturned Sibor, or do you think it ends up the same? I think it's the same. The Ortiz waiver, I think, doesn't really even exist in this case. The charge waiver would be exactly the same. This is not a situation where we didn't raise an issue because we thought it would be futile. We raised an issue three times. We lost. We didn't keep raising it. None of you could imagine that. At this argument, you told me to stop talking about something, and every five minutes I started talking about it again, saying I don't want to wait. That's not how courts work. So there's no issue here until there's nothing to do with it. To the record, in this case, because I want something clear, there was a suggestion that all of the problems that came about with respect to the unclear nature of open-source came about because of tricky lawyers questioning during depositions. I wasn't at the deposition. Are you in the same exact spot as PTO on the historical fact question? Do you think that what they said clearly represents what you believe as well? Yes, Your Honor. The only thing I know is they said it better than I did. But other than that, that is what we've been trying to debate. If you look at our case, we're pretty clear that where we see extreme degeneration coming in isn't because somebody, as the Solicitor's Office put it,  I think it's because there's a defined paramark as to which the judge is not going to be clear and the intrinsic record doesn't make it clear, then you can get extreme evidence to clarify. I guess I just felt what I still am left not understanding is, and I'm concerned about, is that both you and the government represent that that affects such a small sliver of cases. But in my experience, which is anecdotal but extensive now, it's almost every case. It's not a small number of cases. There aren't that many cases in which a patentee chose to act as his own lexicographer or expressed a disavowal or where claim differentiation, which no doubt we've relegated to somewhere near the bottom of the ladder of things that we're willing to consider, somehow makes it such that the historical fact will be rejected. I just see this dominating, and that's my concern. In both cases, the terms that are being discussed are not terms of art, so this doesn't come up. In this case, the judge gave a construction of connected to based on their expert's testimony. He said connected to doesn't mean connected to. You can come up with arguments on that. In the abstract, the word connected to, maybe anyone could understand that in plain meaning, but supposedly it says this connected to this in the electrical context. Well, then maybe you do need to look, what does it mean to be electrically connected? Would RF qualify in addition to wire? Maybe then it does have a meaning. I mean, I don't think even a word that seems to be plain to someone not skilled in the art wouldn't have a component to it that is technical. My point was, Your Honor, that what you see coming up all the time are not legitimate disputes. What people try to do is create disputed issues when they're going to lose in claim construction. In this case, they created an act that they lost in the first instance when the district judge ruled their act was a doubt. They then started changing what they said and putting in expert testimony to try to create an act. That will continue to happen, and this court could, whatever it does with Cyborg, make very clear that this battle of competing experts is rarely productive, rarely going to influence claim construction. Wouldn't the easiest way to make that clear be to reaffirm Cyborg? Yes. Yes, and back to Judge Geronimo's question. If he said to me, well, why demonstrate the site security, I don't have a good answer to that other than that I'm maybe trying to meddle too much in making something that seems to me not quite consistent with Rule 52 consistent. I don't see policy issues. A lot of commentators have said Cyborg is preventing settlements. I don't believe that. I have several cases all the time. No one has ever focused primarily or even significantly on the standard of review on appeals. They're focused on the jury. They're focused on the cost of litigation. So a lot of what's been put up as reasons to change Cyborg I don't think are there, and I do see a lot of negatives in a lot of the court cabinets' names very carefully. Our position is good predicated on the notion that you do have in Cyborg, in consistency with another federal rule-class statute that's been adopted by Congress in trying to make, as Mr. Kelly said, make a corrective move that would be incremental, not as LBC recommends overrides. In this case on the voltage source issue, battery and direct current was brought up by their expert in his declaration. It's not something I'd use at a deposition later. When I asked him about that at a deposition later, if you read the question, I simply said, what else could this direct current source be? He rattled off all the sources. And he said very clearly, in this patent, the solar cell would be the voltage source. In this patent, the generator wouldn't. All of that is what their expert believes. There is no basis. Nor would there be a basis if Judge O'Connor in his first decision recognized what the expert had said, and told us in his August 2010 decision, that there is no structure that's being recited. So I could call on that. I think the real problem here is that the word connotes, which this court has used a number of times, is such a broad term that it means not only does it identify the size or clearly take structure, it means someone's building the argument to figure out. As their expert said in his declaration, to ascertain and implement the structure that would fulfill the function. That's not what this court has required. But the word connotes, as the district court used it in its December opinion, allows for that kind of meaning. This case is one that's quite important to keep the cabin in a very careful claims instruction, because it's functional claiming. You've got to preserve the ability for the public to know what claims mean when they're not specifying the structure clearly. It's also a statutory requirement. So I think this is a case, if you were going to say, we're going to have some opening up of deference, this is a case where you have to be very careful. And you've got a district judge that has a paper record, no markman hearing, no testimony. This is a case, if you ever gave deference, it'd be the thinnest conceivable deference. Thank you, Mr. Peruzza. Thank you. All rise.